# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-490-GCM

| | |
|---|---|
| SANDRA C KENAN, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| ARMADA HOFFLER ) | ORDER |
| CONSTRUCTION, CO., & ROBERT ) | |
| HALF INTERNATIONAL, INC., ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

Plaintiff Sandra Kenan brought this lawsuit against her former employers, Defendants Amanda Hoffler Construction Co. and Robert Half International Inc. alleging violations of the Civil Rights Act of 1991 and Title VII of the Civil Rights Act of 1964. (Doc. No. 22). Before the Court is Defendants' Motion to Dismiss Plaintiff's sex-based and race-based hostile work environment claims. (Doc. No.24). The Motion to Dismiss is fully briefed and ripe for review. Because Plaintiff has provided sufficient grounds in support of her hostile work environment claims, the Court denies Defendants' Motion to Dismiss below.

I.     FACTUAL BACKGROUND

Plaintiff, Mrs. Sandra Kenan, was an employee of Defendants Armada Hoffler Construction Co. ("Armada Hoffler") and Robert Half International Inc. ("Robert Half") (Doc. No. 22, at 2, 3). Robert Half places or assigns employees to temporary or permanent positions with other employers. (Doc. No. 22, at 2). On October 10, 2017, Robert Half assigned Plaintiff to work at Armada Hoffler as an administrative assistant at the Harding Place construction site. (Doc. No.

1

22, at 2, 3). While there, Plaintiff was supervised directly by Brian Quigley, Ron Bartoo, Danny Lyons, Paul Calvano, Dale Rae, and Ralph Dennis. (Doc. No. 22, at 3).

One of those supervisors, Mr. Calvano, antagonized Plaintiff while she worked at Armada Hoffler because she was "a black woman." (Doc. No. 22, at 4). For example, he called her a "stupid black bitch" and asked her if she was "illiterate or just stupid." (Doc. No. 22, at 4). He also stated, in front of other employees, that she looked "like a gorilla." (Doc. No. 22, at 4). In addition, Plaintiff overheard him making a "racial joke about Dr. Martin Luther King, Jr." (Doc. No. 22, at 5).

Another supervisor, Mr. Dennis, "repeatedly and inappropriately touched" Plaintiff. (Doc. No. 22, at 5). For example, on February 1, 2018, Mr. Dennis hugged Plaintiff and "felt her backside." (Doc. No. 22, at 5). Mr. Dennis also touched Plaintiff inappropriately on multiple occasions while she was seated at her desk. (Doc. No. 22, at 5). On one of those occasions, he leaned over her and squeezed her upper thigh and her head. (Doc. No. 22, at 5). Mr. Dennis also made inappropriate sexual advances toward Plaintiff. (Doc. No. 22, at 5). For example, Mr. Dennis asked Plaintiff to go out with him after hours because he was lonely in the absence of his wife. (Doc. No. 22, at 5).

Plaintiff was also forced to use the same restroom facility as male employees, "who left it in [a] disgusting state by leaving urine on the floor and on the toilet." (Doc. No. 22, at 5). The male employees also left the door open while using the restroom. (Doc. No. 22, at 6). Further, Mr. Quigley and Mr. Calvano asked Plaintiff to clean urine and fecal matter from the toilet and floor of the restroom on multiple occasions. (Doc. No. 22, at 5).

As a result of Plaintiff's supervisors and co-workers' behavior, she suffered "severe mental and emotional pain, such as intermittent anxiety, palpitations, shortness of breath, hypervigilance,

nightmares, perceptual disturbances[,] and sleep issues related to [post-traumatic stress disorder]." (Doc. No. 22, at 6). When Plaintiff complained to Defendants that she could no longer work in such a toxic environment, she was terminated from her employment on February 5, 2018. (Doc. No. 22, at 6). Soon after her termination, she filed two charges of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 22, at 6). On June 27, 2018, The EEOC issued Dismissals and Notices of Rights to Plaintiff with respect to both charges. (Doc. No. 22, at 7).

## II. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires . . . a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations omitted). Fed. R. Civ. P. 12(b)(6) provides an avenue to attack a complaint where the "grounds" of a plaintiff's "entitle[ment] to relief" are insufficient. *Id.* (citation omitted). When faced with a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court then "determine[s] whether [those allegations] plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Further, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotations and citation omitted).

**III. DISCUSSION**

Plaintiff raises three claims: (1) hostile work environment based on her race and sex in violation of Title VII, (2) hostile work environment based on her race in violation of Section 1981, and (3) discriminatory and retaliatory discharge in violation of Title VII and Section 1981. (Doc. No. 22, at 7-9). Defendants argue that Plaintiff has failed to allege sufficient facts to establish plausible race-based and sex-based hostile work environment claims and that, consequently, her first and second claims should be dismissed. (Doc. No. 25, at 3). The Court addresses both arguments in turn.

**A. Race-Based Hostile Work Environment Claims**

Defendants first argue that Plaintiff has failed to state race-based Title VII and Section 1981 hostile work environment claims. (Doc. No. 25, at 4). To state such claims, plaintiffs must allege that the harassment was (1) unwelcome, (2) based on race, (3) sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive atmosphere, and (4) imputable to the employer. *Squitieri v. Piedmont Airlines, Inc.*, No. 3:17CV441, 2018 U.S. Dist. LEXIS 25485, at *5 (W.D.N.C. Feb. 16, 2018) (citing *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010) (Title VII); *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344 (4th Cir. 2006) (Section 1981 principles are same as those for Title VII)).

With regard to the "severe or pervasive" element, "that determination is made by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (internal quotations and citation omitted). In addition, the work environment must be both subjectively and objectively offensive. *EEOC v.*

*Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). While viable hostile work environment claims often involve repeated—or "pervasive"—conduct, "an isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment" if it is "extremely serious"—or severe—conduct. *See Boyer-Liberto*, 786 F.3d at 277. Indeed, the Fourth Circuit has observed that "perhaps no single act can more quickly alter conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *Id.* at 280 (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001)) (internal quotations omitted). Similarly, "describing an African American as a 'monkey,' and thereby 'suggesting that a human being's physical appearance is essentially a caricature of a jungle beast, goes far beyond the merely unflattering; it is degrading and humiliating in the extreme.'" *Id.* (citing *Spriggs*, 242 F.3d at 185).

In *Boyer-Liberto*, the Fourth Circuit considered whether a supervisor's use of the term "porch monkey," which was employed on two occasions within two days, "was severe enough to engender a hostile work environment." *Id.* Ultimately, it found that, "whether viewed as a single incident or as a pair of discrete instances of harassment," it was. *Id.* (citing *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1253-54 (11th Cir. 2014) (concluding that, although a Caucasian supervisor's carving of "porch monkeys" into the aluminum of a ship where he was working with the African-American plaintiff "was an isolated act, it was severe"); *Ayissi-Etoh*, 712 F.3d 572, 577 (D.C. Cir. 2013) (acknowledging that, where a supervisor "used a deeply offensive racial epithet ['nigger'] when yelling at Ayissi-Etoh to get out of the office," that "single incident might well have been sufficient to establish a hostile work environment"); *id.* at 580 (Kavanaugh, J., concurring) ("[I]n my view, being called the n-word by a supervisor—as Ayissi-Etoh alleges happened to him—suffices by itself to establish a racially hostile work environment.")).

Here, Defendants argue[1] that Plaintiff has not provided sufficient grounds in support of the "severe or pervasive" element of her race-based hostile work environment claims. (Doc. No. 25, at 4-6). However, Plaintiff alleges that one of her supervisors, Mr. Calvano, called her a "'stupid black bitch'" and, in front of other employees, stated that she looked "'like a gorilla.'" (Doc. No. 22, at 4, 5). Thus, like in *Boyer-Liberto*, Plaintiff alleges that her supervisor used an unambiguous racial epithet likening her to a "jungle beast." That epithet, whether viewed alone or in conjunction with the fact that Mr. Calvano also called her a "stupid black bitch," provides sufficient support for the "severe or pervasive" element of Plaintiff's race-based hostile work environment claims. *See Boyer-Liberto*, 786 F.3d at 280. Thus, Plaintiff's Motion to Dismiss those claims is **DENIED**.

**B. Sex-Based Hostile Work Environment Claim**

Defendants also argue that Plaintiff has failed to state a sex-based Title VII hostile work environment claim. To establish such a claim, 'a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011). With regard to the third element, "there are both subjective and objective components." *Id.* at 333 (internal quotations and citation omitted). "The environment must be perceived by the victim as hostile or abusive, and that perception must be objectively reasonable." *Id.* (Citation omitted). "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id.* Those circumstances

---

[1] Defendants also argue that "Plaintiff fail[ed] to allege that any of Defendant[s'] actions interfered with her ability to perform her job duties." (Doc. No. 25, at 6). Defendant is incorrect. In her Amended Complaint, Plaintiff alleges that Defendants' actions caused her emotional and mental pain, anxiety, post-traumatic stress disorder, and other issues and that, as a result, she was no longer able to work for Defendants. (Doc. No. 22, at 6).

include the nature of the workplace environment and are not limited to conduct directed at the plaintiff. *Id.*

"A work environment consumed by remarks that intimidate, ridicule, and maliciously demean the status of women can create" a hostile work environment. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242-43 (4th Cir. 2000). For example, in *Mosby-Grant v. City of Hagerstown*, a female police recruit was subjected to laughter when she tested her firearm, to a co-worker's recounting of his sexual encounter with a sixteen-year-old girl, and to "dozens of references to women as 'bitches, crazy, white trash ghetto, and prostitutes." 630 F.3d 326, *336 (4th Cir. 2010). The plaintiff was also called a "bitch" by an instructor. *Id.* The Fourth Circuit determined that the plaintiff's allegations were adequate for a reasonable jury to find that the work environment was infected with a severe or pervasive air of sex-based hostility that affected her conditions of employment.

Unwanted sexual conduct can also create a hostile work environment. *See Moser v. MCC Outdoor, L.L.C.*, 256 F. App'x 634, 642 (4th Cir. 2007). In *Moser*, the plaintiff's supervisor—over the course of a year—communicated to her that he wanted to have sex with her, slipped his arm around her waist, hugged her, placed his hand on her thigh, and "eyeballed [her] up and down *constantly*." *Id.* at 640, 641. He also told the plaintiff that he has no one to have sex with and that he would like to go over to her house, reiterating his sexual desire for her. *Id.* The Fourth Circuit determined "that the forecasted evidence . . . was sufficient" to support her hostile work environment claim, reversing a district court's summary judgement against that claim. *Id.* at 642.

Here, Defendants argue that Plaintiff has not provided sufficient grounds in support of the "severe or pervasive" element of her sex-based hostile work environment claim. (Doc. No. 25, at 7-8). However, while Plaintiff does not appear to have been subjected to as extensive an array of

unwanted sexual conduct as the plaintiff in *Moser*, she alleges frequent inappropriate touching and one serious incident where her supervisor, Mr. Dennis, "felt her backside" when he hugged her. (Doc. No. 22, at 5). Mr. Dennis also squeezed her upper thigh and her head while she was seated at her desk. (Doc. No. 22, at 5). Further, and like the supervisor in *Moser*, Mr. Dennis told Plaintiff that he was "lonely" and asked her to go out with him after hours, potentially indicating his sexual desire for her. (Doc. No. 22, at 5). All of that unwanted sexual conduct occurred within just four months. (Doc. No. 22, at 3, 6).

Plaintiff, like the plaintiff in *Mosby-Grant*, was also called a "bitch" by her supervisor. (Doc. No. 22, at 4). In addition, she was subjected to male employees leaving the door open while using the restroom, and, after they made a mess of the restroom, she was required to clean it. (Doc. No. 22, at 5, 6). While those allegations fall far short of the offensive and ridiculing remarks alleged in *Mosby-Grant*, when they are considered alongside Plaintiff's allegations of unwanted sexual conduct and in a light most favorable to Plaintiff, it is clear that she alleges an objectively hostile and abusive work environment. Further, Plaintiff shows that she subjectively perceived the environment to be hostile and abusive by alleging, as explained above, that Defendants' conduct harmed her and left her unable to work with Defendants. *See supra* at 6 n.1. Thus, Defendants' Motion to Dismiss Plaintiff's sex-based hostile work environment claim is **DENIED**.

IV. **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is **DENIED**. Plaintiff's sex-based and race-based Title VII hostile work environment claim, race-based Section 1981 hostile work environment claim, and Title VII and Section 1981 discriminatory and retaliatory discharge claim remain.

**SO ORDERED**.

Signed: March 2, 2020

Graham C. Mullen
United States District Judge